HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

REBECCA WISCOMBE,

Plaintiff,

v.

DELTA AIRLINES, INC., *et al.*,

Defendants.

CASE NO. 2:25-cv-01881-RAJ

ORDER

## I.   INTRODUCTION

THIS MATTER comes before the Court on Defendant Prospect International Airport Services, LLC's ("Prospect") Motion to Dismiss, Dkt. # 10.   The Court has reviewed the motion, the submissions in support of and in opposition to the motion, and the balance of the record.   For the reasons set forth below, the Court **GRANTS IN PART and DENIES IN PART** Prospect's motion.

## II.   BACKGROUND

Plaintiff Rebecca Wiscombe is "a disabled individual who relies on a wheelchair for mobility, cannot walk or wear shoes due to her disability, and who relies on a service animal for assistance with daily activities." Dkt. # 1-2 at 3.   She alleges that on or about

ORDER – 1

October 18, 2023, she was traveling as a ticketed passenger with Defendant Delta Airlines, Inc. ("Delta"), departing from SeaTac International Airport. *Id.* [1]  On this day, a Prospect employee assisted Ms. Wiscombe by pushing her in a Prospect-owned wheelchair to her departure gate. *Id.*  The employee, however, did not strap Ms. Wiscombe into the wheelchair. *Id.*

Upon boarding, the Prospect employee pushed Ms. Wiscombe down the jet bridge in the Prospect wheelchair to board the plane. *Id.* at 4.  Ms. Wiscombe instructed the Prospect employee that "he would need to turn the wheelchair around and pull it facing backward over the lip between the jet bridge and the aircraft." *Id.*  The Prospect employee did not follow these instructions, and "instead proceeded onto the aircraft facing forward." *Id.*  When "the wheels of the wheelchair came in contact with the aircraft, the wheelchair tipped forward and Plaintiff Wiscombe fell out of the wheelchair, hitting her head on a hard surface in the aircraft and falling to the ground." *Id.*  "Due to her disabilities, Plaintiff Wiscombe was unable to put herself back in the wheelchair independently." *Id.*  Instead of assisting her back in the wheelchair, the Prospect employee "grabbed Plaintiff Wiscombe by the ankles without her consent and forcibly dragged her behind him down the aisle of the aircraft on her back, past several first-class passengers, until he reached Plaintiff Wiscombe's designated seat and lifted her forcefully into her seat, then left the aircraft." *Id.*  Ms. Wiscombe alleges that "[w]hile being dragged," her body "repeatedly came into forceful contact with various metal and other hard surfaces of the aircraft, subjecting her to humiliation, physical injury to her person, and severe emotional distress." *Id.* at 4–5.

Based on these events, Ms. Wiscombe brought claims against Prospect for:  (1) negligence; (2) negligent hiring, training, and supervision; (3) battery; (4) assault; (5)

---

[1] Ms. Wiscombe makes additional allegations against Delta.  However, because the motion to dismiss involves only claims against Prospect, the Court will not recount in this order the allegations or claims against the other defendants.

ORDER – 2

outrage/intentional infliction of emotional distress; (6) negligent infliction of emotional distress; (7) violation of the Washington Law Against Discrimination, RCW 49.60 ("WLAD"); and (8) violation of the Washington Consumer Protection Act, RCW 19.86 ("CPA"). Prospect moves to dismiss Ms. Wiscombe's WLAD and CPA claims for failure to state a claim. *Id.* at 5–7.

### III.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In analyzing a motion to dismiss, courts "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). "Conclusory allegations and unreasonable inferences, however, are insufficient to defeat a motion to dismiss." *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).

### IV.   DISCUSSION

#### A.   WLAD Claim

Prospect argues Ms. Wiscombe fails to state a WLAD claim against Prospect because "WLAD applies only to employment and places of public accommodation, not services." Dkt. # 10 at 6. Ms. Wiscombe, relying on this Court's decision in *Maddox v. United Network for Organ Sharing*, 787 F. Supp. 3d 1159 (W.D. Wash. 2025), argues the WLAD requirements "can be satisfied 'where services are connected to a physical place of public accommodation in Washington State,' even if the defendant does not own the place of public accommodation." Dkt. # 14 at 5. The Court agrees with Ms. Wiscombe.

The WLAD declares, in relevant part, that it is a civil right "to be free from discrimination because of . . . the presence of any sensory, mental, or physical disability."

ORDER – 3

RCW 49.60.030(1).   This includes the "right to the full enjoyment of any of the accommodations, advantages, facilities, or privileges of any place of public resort, accommodation, assemblage, or amusement."   RCW 49.60.030(1)(b).   "Full enjoyment" includes, in relevant part, "admission of any person to accommodations, advantages, facilities, or privileges of any place of public resort, accommodation, assemblage, or amusement, without acts directly or indirectly causing persons . . . with any sensory, mental, or physical disability . . . to be treated as not welcome, accepted, desired, or solicited."   RCW 49.60.040(14).   The WLAD must be construed liberally to accomplish its purposes, including the elimination and prevention of discrimination in places of public accommodation.   RCW 49.60.010, .020.

To make out a prima facie case under RCW 49.60.215, the plaintiff must show: "(1) they have a disability recognized under the statute; (2) the defendant's business or establishment is a place of public accommodation; (3) they were discriminated against by receiving treatment that was not comparable to the level of designated services provided to individuals without disabilities by or at the place of public accommodation; and (4) the disability was a substantial factor causing the discrimination." *Fell v. Spokane Transit Auth.*, 911 P.2d 1319, 1328 (Wash. 1996).   At issue here is the second factor, whether Prospect's business is a place of public accommodation.

In *Fell*, plaintiffs challenged the Spokane Transit Authority's new plan for paratransit service, which discontinued service to the plaintiff class. *Id.* at 1321–22.   The parties agreed that public transit was a public accommodation. *Id.* at 1329.   Plaintiffs argued, however, that "the relevant place of public accommodation is the entire service area" of the Spokane Transit Authority. *Id.*   In this context, the Washington Supreme Court pronounced that the reach of the WLAD "extends to places and facilities, *not services*." *Id.* (emphasis in original).   It explained that "a municipality may provide services to its constituents at fixed points," like libraries, schools, and other services traditionally provided at specific locales. *Id.*   Under the plaintiffs' proposal, however, "no matter how

ORDER – 4

remote the residence of the disabled person from the fixed point of government services," the "government must, in effect, go to that disabled individual and provide service." *Id.* A similar concern may also be "present for private sector enterprises providing public accommodations." *Id.* The court declined to adopt the plaintiffs' broad interpretation of public accommodation, and reiterated that "the statutory mandate to provide access to places of public accommodation is not a mandate to provide services." *Id.*

In *Maddox*, this Court addressed whether an organization that manages the national organ transplant waitlist may be liable under the WLAD despite not having a physical location in Washington. *Maddox*, 787 F. Supp. 3d at 1163. There, the Court found the organization's provision of services, benefits, and privileges to the plaintiff were all connected to services received at Swedish hospital, "at a fixed-point location." *Id.* at 1164. The Court found that this "distinction alleviates the *Fell* majority's concern about the potentially boundless scope of an entity's obligation to provide services in a nondiscriminatory manner beyond fixed points where the services were already provided and were considered a 'place of public accommodation.'" *Id.* at 1164–65. Thus, the Court concluded that *Fell* "does not foreclose the possibility that an organization without a physical presence in the state can satisfy the WLAD's requirements where those services are connected to a physical place of public accommodation in Washington State." *Id.* at 1165. The Court further noted it would be inconsistent with the legislature's directive to construe the WLAD liberally to "allow an entity to evade liability for a discriminatory conduct that occurred in a place of public accommodation in Washington State." *Id.*

In another illustrative case from the Eastern District of Washington, the court examined whether United States Customs and Border Protection ("CBP") agents could be liable under the WLAD for allegedly profiling a Latino man and preventing him from boarding a bus at a transit center. *Segura v. United States*, 418 F. Supp. 3d 605, 608 (E.D. Wash. 2019). The United States argued the CBP agents "were not employees or agents" of the transit center and the United States "does not own, operate, or exercise control over"

ORDER – 5

the transit center. *Id.* at 613. The court declined to adopt this narrow reading of the WLAD, and instead found "the WLAD covers situations where federal officers enter places of accommodation and wield their power over individuals at places of accommodation." *Id.* The court found that under the plain language of the WLAD, the United States may be liable because the alleged acts "'directly or indirectly' caused Plaintiff 'to be treated as not welcome, accepted, desired, or solicited'" at the transit center, or else directly or indirectly resulted in discrimination against him at the transit center because of his race. *Id.* (citing RCW 49.60.040(14), .030(1)(b) and RCW 49.60.215).

*Maddox* and *Segura* are directly applicable to this case, and the Court sees no reason to depart from their reasoning. Here, it is undisputed that the airport, including the jet bridge and plane where the alleged incident took place, is a place of public accommodation. *See* RCW 49.60.040(2) (places of public accommodation include places "for public conveyance or transportation on land, water, or in the air, including the stations and terminals thereof"). Like in *Maddox*, Prospect's services to Ms. Wiscombe were all connected to services at the SeaTac airport, a fixed location. Like in *Segura*, Prospect's alleged actions prevented Ms. Wiscombe's full enjoyment of this public accommodation— that is, boarding the plane "without acts directly or indirectly causing" her "to be treated as not welcome, accepted, desired, or solicited." RCW 49.60.040(14), .030(1)(b). The situation here is thus distinct from *Fell*, where the Washington Supreme Court was concerned about the implication that entities may be required to bring services to protected individuals unbounded by the fixed location of an existing public accommodation. Here, Ms. Wiscombe was at a place of public accommodation, Prospect's alleged actions occurred solely within that place of public accommodation, and the alleged actions prevented Ms. Wiscombe's full enjoyment of the public accommodation. Indeed, the situation here bears an even closer nexus to a place of public accommodation than either *Maddox* or *Segura* because Prospect was specifically tasked with assisting individuals with disabilities navigate the airport. Finding that a service provider like Prospect falls within

ORDER – 6

the reach of the WLAD is consistent with the statute's purpose of eliminating and preventing discrimination in places of public accommodation. *See* RCW 49.60.010, .020.[2]

Accordingly, Prospect's motion to dismiss Ms. Wiscombe's WLAD claim is denied.

### B.    CPA Claim

Next, Prospect argues that Ms. Wiscombe fails to state a CPA claim against Prospect. Dkt. # 10 at 9. The Court agrees. To prevail in a private CPA claim, the plaintiff must prove (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) affecting the public interest; (4) injury to a person's business or property; and (5) causation. *Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986). Here, Ms. Wiscombe at minimum fails to allege elements one, two, three, and five.[3] Failure to allege any one of these elements defeats her CPA claim.

### i.    Unfair and Deceptive Act or Practice

The parties' arguments focus on the "deceptive" prong of element one of a CPA claim. "For a Washington CPA claim, a deceptive act is 'a representation, omission or practice that is likely to mislead' a reasonable consumer." *Zulily, LLC v. Amazon.com, Inc.*, 761 F. Supp. 3d 1368, 1393 (W.D. Wash. 2024) (quoting *Shields v. Fred Meyer Stores Inc.*, 741 F. Supp. 3d 915, 931 (W.D. Wash. 2024)). "While the CPA 'does not define the term 'deceptive,' the implicit understanding is that 'the actor misrepresented something of

---

[2] In a recent Washington Court of Appeals opinion, the court held that "a business may not discriminate in violation of the WLAD in the provision of its services that it makes available to the public." *A.S. v. PROVAIL*, 581 P.3d 193, 200 (Wash. Ct. App. 2025), *review granted in part*, 587 P.3d 1043 (Wash. 2026). Because the Court finds Prospect's services were connected to a place of public accommodation, it need not rely on the broader holding of *A.S.* that the WLAD applies to services made available to the public, regardless of whether it is provided at a place of public accommodation. Nevertheless, the Court of Appeals' decision further confirms that Washington courts do not interpret the WLAD and *Fell* in the narrow manner advocated by Prospect. *See id.* at 201 ("When *Fell* said the WLAD applied to places and facilities, not services, it was in holding in that case that the transit facilities were the public accommodation, not the transit service itself.").

[3] The Court declines to reach the issue of whether Ms. Wiscombe suffered an injury within the scope of the CPA.

ORDER – 7

material importance." *Id.* (quoting *Shields*, 741 F. Supp. 3d at 931). "A plaintiff need not show the act in question was intended to deceive, only that it had the capacity to deceive a substantial portion of the public." *Panag v. Farmers Ins. Co. of Washington*, 204 P.3d 885, 894 (Wash. 2009). "Whether a particular act is 'unfair or deceptive' is a question of law." *Id.*

Here, Ms. Wiscombe fails to allege any deceptive act or practice by Prospect. For example, she does not allege any misleading advertisements or promises that Prospect made about its services. *See Zulily*, 761 F. Supp. 3d at 1394 (finding plaintiff failed to allege a deceptive act or practice because it did "not identify any representation [defendant] made to consumers about its prices or the competitiveness of its prices."). In her response brief, Ms. Wiscombe argues that Prospect "held themselves out as providers of airline services capable of assisting disabled passengers." This allegation, however, is not part of the complaint and cannot be used to defeat a motion to dismiss. Ms. Wiscombe also cites no authority for her position that the mere act of offering a service, without any affirmative representations about the service, could constitute a deceptive act or practice under the CPA if those services turn out to be inadequate.

### ii.      Trade or Commerce

"'Trade' and 'commerce' shall include the sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington." RCW 19.86.010(2). "The term 'trade' as used by the Consumer Protection Act includes only the entrepreneurial or commercial aspects of professional services, not the substantive quality of services provided." *Michael v. Mosquera-Lacy*, 200 P.3d 695, 699 (Wash. 2009) (quoting *Ramos v. Arnold*, 169 P.3d 482, 486 (Wash. Ct. App. 2007)). For example, in the medical practice context, "billing and obtaining and retaining patients" constitute entrepreneurial or commercial aspects of the business. *Id.* On the other hand, "[c]laims directed at the competence of and strategies by a professional amount to allegations of

ORDER – 8

negligence and are exempt from the Consumer Protection Act." *Id.* (citing *Ramos*, 169 P.3d at 486).

Here, Ms. Wiscombe does not challenge any entrepreneurial or commercial aspects of Prospect's business, such as its billing or advertising practices. Rather, she challenges the competence of and strategies by Prospect while helping her board her plane. While this is actionable under a negligence theory, it is exempt from the scope of the CPA. Thus, Ms. Wiscombe also fails to plausibly plead the "trade or commerce" element of a CPA claim.

### iii.    Public Interest

The purpose of the CPA is to "protect the public." RCW 19.86.920. "[I]t is the likelihood that additional plaintiffs have been or will be injured in exactly the same fashion that changes a factual pattern from a private dispute to one that affects the public interest." *Michael*, 200 P.3d at 700 (quoting *Hangman Ridge*, 719 P.2d at 538). "[T]here must be shown a real and substantial potential for repetition, as opposed to a hypothetical possibility of any isolated unfair or deceptive act's being repeated." *Id.* (quoting *Eastlake Constr. Co. v. Hess*, 686 P.2d 465, 477 (Wash. 1984)). For a private dispute, courts analyze the following factors to determine whether the dispute would affect the public interest: "(1) whether the alleged acts were committed in the course of defendant' business; (2) whether the defendant advertised to the public in general; (3) whether the defendant actively solicited this particular plaintiff, indicating potential solicitation of others; (4) whether the plaintiff and defendant have unequal bargaining positions." *Id.* "None of the factors are dispositive nor must all of the factors be present." *Id.*

The question here is whether the specific circumstances of Prospect's alleged treatment of Ms. Wiscombe are likely to repeat, such that they may be said to affect the public interest. While Prospect's alleged conduct is undoubtedly serious, there are no allegations in the complaint suggesting it is part of a larger pattern and is likely to be repeated in the future. Moreover, in analyzing the four factors discussed above, the Court

ORDER – 9

finds that the alleged acts were committed in the course of Prospect's business, but there are no allegations that Prospect advertised to the public in general, or that it actively solicited Ms. Wiscombe's business. There are also no allegations regarding either party's bargaining position. On balance, these factors weigh against finding that this private dispute affects the public interest. *See id.* (holding plaintiff failed to satisfy public interest requirement because there was no evidence defendant advertised to the public or solicited plaintiff in particular, and there was "no likelihood or any real or substantial potential that other people will be injured in the same way [plaintiff] was injured."). Thus, Ms. Wiscombe also fails to plausibly allege the "public interest" element of a CPA claim.

### iv.    Causation

Finally, a CPA plaintiff must show the "deceptive act or practice proximately caused injury to the plaintiff's 'business or property." *Panag*, 204 P.3d at 902. Because Ms. Wiscombe fails to allege any unlawful or deceptive act or practice, she also fails to allege that such an act or practice caused the injury in this case.

In sum, the Court finds that Ms. Wiscombe fails to plausibly allege a CPA claim for at least four independent reasons. Nevertheless, the deficiencies identified in this order may be cured by amendment, and dismissal is therefore with leave to amend.

//
//
//
//
//
//
//
//
//

ORDER – 10

## V.   CONCLUSION

For the forgoing reasons, the Court **GRANTS IN PART and DENIES IN PART** Prospect's motion to dismiss, Dkt. # 10.  Ms. Wiscombe's CPA claim (count eight) against Prospect is **DISMISSED** with leave to amend within 21 days of this order.  Prospect's motion to dismiss Ms. Wiscombe's WLAD claim (count seven) against Prospect is **DENIED**.

Dated this 2nd day of June, 2026.

The Honorable Richard A. Jones
United States District Judge

ORDER – 11